In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3252

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY WILBOURN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:01CR00064(01)RM—**Robert L. Miller**, **Jr.**, *Chief Judge.*

ARGUED JUNE 5, 2003—DECIDED JULY 15, 2003

Before FLAUM, *Chief Judge*, and COFFEY and MANION,
*Circuit Judges*.

FLAUM, *Chief Judge*.  The sole issue presented in this
criminal appeal is whether the district court abused its
discretion in denying defendant Anthony Wilbourn's re-
quest for a second competency evaluation. We affirm.

## I. BACKGROUND

After being charged, along with two codefendants, with
one count of armed bank robbery, 18 U.S.C. § 2113(a), (d),
and one count of brandishing a firearm during a crime
of violence, *id.* § 924(c), Wilbourn pleaded not guilty and

moved for a competency evaluation and hearing. In the motion Wilbourn's attorney, Robert Truitt, alleged that he believed that his client was unable to understand the nature of the process, the nature of the charges, or the role of defense counsel, and had "almost no ability to recall recent events and . . . extremely limited ability to communicate thoughts to the undersigned." Truitt further alleged that Wilbourn had been treated earlier for a possible organic brain injury.

The district court granted the motion and had Wilbourn evaluated by Lea Ann Preston, a clinical psychologist. Dr. Preston concluded that Wilbourn was "malingering," which is defined in the DSM-IV as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 739 (rev. 4th ed. 2000). As Dr. Preston explained in her report,

> While it is not unusual for an individual to experience some memory loss or other neurological dysfunction after an extensive history of alcohol and drug abuse or severe head injury, Mr. Wilbourn's current claims are simply ludicrous. Even severely brain injured individuals are typically able to recall basic personal information. Mr. Wilbourn's claim that he is unable to recall his birthday, address, or family members' names is simply ridiculous. Even more ridiculous was his statement, "What's a bank?" after he was told he was charged with Bank Robbery.

As additional evidence of Wilbourn's malingering, Dr. Preston noted such things as his statement that he did not know how to read despite the fact that he had a GED.

Truitt orally moved for a second competency evaluation during a status conference held in January 2002, about

a week after Dr. Preston issued her report. According to Truitt, Wilbourn had told him to request another evaluation after reviewing Dr. Preston's report the night before. The court, however, agreed with the government that an additional examination was unnecessary, finding that the one that had already been done "appear[ed] to have been thorough and complete . . . and the record contains little to suggest that a second examination would produce any [different] result."

The court thus denied Wilbourn's oral motion, and the case proceeded to a competency hearing. After considering all the testimony (the substance of which is largely irrelevant for purposes of this appeal), the court found that Wilbourn was competent, stating that it was "left with little doubt" that he was malingering. On the first day of trial, Truitt seemed to challenge this ruling, advising the court that he was "yet to have any kind of meaningful conversation with Mr. Wilbourn concerning the events that form the indictment in this matter. He claims to have no memory of the events that form the basis of the indictment. I asked him this morning if he knew what was going on, that this was a trial. And he claimed that he does not have any understanding of what is about to take place." In response the court, while recognizing the difficulty of Truitt's situation, stated that "the information conveyed [would not] affect the earlier ruling. It's consistent with the information that led up to the earlier ruling." Thus seeing no reason "to reexamine or to doubt the earlier ruling on competency," the court ordered that the trial proceed but "in recognition that the position of defense counsel in this case is far more difficult than in the ordinary trial."

The jury found Wilbourn guilty on both counts of the indictment, and the court sentenced him to 384 months' imprisonment. This appeal followed.

## II. DISCUSSION

The parties spend a large part of their briefs discussing the evidence presented at the competency hearing, but we find much of their discussion irrelevant. For Wilbourn is not challenging the court's ruling on competency; rather, his sole claim on appeal is that the court erred in denying his request for a second evaluation. We review that decision for abuse of discretion. *United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir. 1994).

It is unclear whether Wilbourn is claiming that the court should have ordered a second examination when Truitt requested it during the January 2002 status conference or on the first day of trial when Truitt voiced his concerns about Wilbourn's inability to communicate with him. But it does not matter either way. Truitt never provided any information, either at the status conference or at trial, that should have given the court any new concerns that Wilbourn was incompetent. In fact Truitt's statement at the status conference that Wilbourn had reviewed Dr. Preston's report and wanted a second opinion was, if anything, proof that Wilbourn *was* competent. And the information Truitt provided at trial—that Wilbourn was unable to communicate, had no memory of the events forming the basis of the charge, and did not understand the nature of the proceedings—was consistent with the information that was available when Dr. Preston issued her report and when the court made its competency ruling. In short it was not an abuse of discretion for the court to deny Wilbourn's request for a second evaluation when the sole basis for that request was the fact that he continued to demonstrate behavior that the court had already found to be malingering. *See United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991) (district court did not abuse its discretion in refusing to order second competency examination where there was "no evidence in [the] record of any irrational

behavior by Defendant that was not adequately explained in the single competency report").

### III. CONCLUSION

Wilbourn's conviction and sentence are AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*